**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------------------------------
JOHN DUFFY III,                          :
                                         :
                    Plaintiff,           :          Civ. No. 06-5259 (DRD)
                                         :
          v.                             :
                                         :
SAMSUNG ELECTRONICS AMERICA,             :               O P I N I O N
INC.,                                    :
                                         :
                    Defendant.           :
                                         :
-------------------------------------------------------
```

KATZ & KLEINMAN, PLLC
Lawrence Katz, Esq.
626 Reckson Plaza
Uniondale, New York 11556

*Attorneys for Plaintiff John Duffy III*


DLA Piper US LLP
Robert A. Assuncao, Esq.
379 Thornall Street, 8th Floor
Edison, New Jersey 08837-2226

*Attorneys for Defendant Samsung Electronics America, Inc.*


**DEBEVOISE, Senior District Judge**


## I.  PROCEDURAL HISTORY

Plaintiff John Duffy III ("Plaintiff" or "Duffy") filed a class action complaint in this

matter on November 2, 2006 (the "Complaint").  In the Complaint, Plaintiff alleges the following

1

counts against defendant, Samsung Electronics America, Inc. ("Defendant" or "Samsung"): (1) Count I- Breach of Warranty; (2) Count II- Consumer Fraud; and (3) Fraudulent Concealment. Defendant now moves for dismissal of all counts pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, Defendant's motion will be granted.

## II.  BACKGROUND

Plaintiff is a resident of Greenvale, New York, and Defendant is a New York Corporation with its principal place of business in Mount Arlington, New Jersey.  (Compl. ¶ 3-4).  Plaintiff brought this action "to secure redress from the conduct of defendant . . . in selling thousands of microwave ovens with defective membrane panels that could cause the microwave to turn on by itself, without human intervention, and start a fire."  (Compl. ¶ 1).  Plaintiff alleges that "the putative class consists of many thousands of members far in excess of 100, located throughout the United States . . ." and that "the amount in controversy for the class as a whole exceeds $5 million."  (Compl. ¶ 2).

Plaintiff alleges that at the end of 2002, he received a microwave oven, manufactured and/or imported by Samsung, as a gift.  (Compl. ¶ 5).  Plaintiff alleges that the microwave sold for "hundreds of dollars."  (Compl. ¶ 6).  Plaintiff claims that he received a written limited warranty from Samsung in which Samsung undertook to repair or replace the product if found to be defective during the limited warranty period, which was one year.  (Compl. ¶ 7).  Plaintiff claims that the warranty "is an express warranty under the Uniform Commercial Code and a written warranty within the Magnuson Moss Consumer Warranty Act, 15 U.S.C. § 2301 et seq." (Compl. ¶ 8).  The "Limited Warranty To Original Purchaser" (the "Warranty") states in part:

This limited warranty begins on the original date of purchase, and is valid only on products purchased and used in the United States. To receive warranty service, the purchaser must contact SAMSUNG for problem determination and service procedures. Warranty service can only be performed by a SAMSUNG authorized service center. The original dated bill of sale must be presented upon request as proof of purchase to SAMSUNG or SAMSUNG's authorized service center. Transportation of the product to and from the service center is the responsibility of the purchaser. SAMSUNG will repair or replace this product at our option and at no charge as stipulated herein, with new or reconditioned parts or products if found to be defective during the limited warranty period specified above . . .

\*\*\*

THERE ARE NO EXPRESS WARRANTIES OTHER THAN THOSE LISTED AND DESCRIBED ABOVE, AND NO WARRANTIES WHETHER EXPRESS OR IMPLIED . . . SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE, AND NO OTHER EXPRESS WARRANTY OR GUARANTY GIVEN BY ANY OTHER PERSON, FIRM OR CORPORATION WITH RESPECT TO THIS PRODUCT SHALL BE BINDING ON SAMSUNG.

(Compl. Ex. A).

On or about October 8, 2003, Samsung, in cooperation with the United States National Highway Traffic Safety Administration ("NHTSA"), announced the recall of nearly 184,000 microwave ovens that were installed in recreational vehicles ("RVs") sold in the U.S. during the previous three years (the "Recall"). (Compl. Ex. B). The Recall was the result of a determination by Samsung that "some of these microwave ovens may present a safety hazard due to a defective part that may cause them to begin operation unassisted and result in smoke or fire." (Id.). The defective part is identified as "a defect in the manufacture of the Touch Pad Membrane [which] may cause the microwave oven to auto start." (Compl. Ex. D). Customers who owned the RVs with the affected ovens were advised to unplug the microwaves, or, if that

was not possible, leave the microwave door ajar to prevent it from operating.  (Compl. Ex. B).

Plaintiff alleges that numerous Samsung microwaves that were not installed in RVs, including the one he owned, also contained the defective part.  (Compl. ¶ 12).  Plaintiff claims that because NHTSA's jurisdiction to order recalls is limited to vehicles, similar or identical microwaves installed in homes were not recalled despite the fact that they also contained the defective part and presented identical fire hazards.  (Compl. ¶ 13).

Plaintiff alleges that in September 2006, he discovered that his Samsung microwave had turned itself on while Plaintiff was away on a trip.  (Compl. ¶ 14).  Plaintiff claims that he contacted Samsung, was told by a representative that he should immediately stop using the microwave because it was a fire hazard, and was told that if he cut the electrical cord and sent the cord with the serial number of the microwave to Samsung, he would receive a $50 coupon or credit toward a new Samsung microwave.  (Compl. ¶ 15).  Plaintiff contends that "this $50 credit policy represents Samsung's standard response to complaints that microwave ovens turn themselves on." (Compl. ¶ 16).  Plaintiff alleges that by letter dated September 20, 2006, he formally notified Samsung of the defect and requested a replacement of the microwave.  (Compl. ¶ 17).  That letter states in part:

> I questioned . . . [a customer service representative] on your recall of microwave ovens that were posted on the Samsung website and was informed that those recalls were only related to microwaves installed in RV's.  Considering that your recall of the RV microwaves appears to have a similar condition, I am disappointed that you have not offered a replacement microwave even though the warranty is no longer in effect.  I believe that I am entitled to a replacement microwave and request a new microwave.

4

Plaintiff claims Defendant has failed and refused to replace the microwave.  (Compl. ¶ 18).

## III.  DISCUSSION

### 1.  Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73.  Allegations contained in the Complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations."  Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  However, the plaintiff is required to make factual allegations and cannot rely on conclusory recitations of law.  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

### 2.  Count I- Breach of Warranty

Plaintiff alleges that Defendant "violated its written limited warranty, in that the model of microwave oven owned by plaintiff was found to be defective within the warranty period, but defendant refused to repair or replace either the defective membrane panel or the entire oven." (Compl. ¶ 26).  Plaintiff claims that "[t]he durational limitation of the warranty was satisfied by Samsung's determination that its membrane panels were defective."  (Compl. ¶ 28). Alternatively, Plaintiff contends that "the durational limitation is unreasonable, unconscionable and ineffective under 15 U.S.C. § 2308 and UCC §§ 2-316 and 2-719, because defendant knew the product was seriously defective and a fire hazard, and allowed the public to continue using it."  (Id.).  Plaintiff claims he is entitled to sue under UCC § 2-313 and 15 U.S.C. § 2310.

5

(Compl. ¶ 27).

Defendant argues that Plaintiff's breach of warranty claim, which arises from Samsung's alleged violation of its express written limited warranty, is precluded by the one-year warranty period. Additionally, Defendant contends that Plaintiff's claim that "[t]he durational limitation of the warranty was satisfied by Samsung's determination that its membrane panels were defective" fails for four reasons: (1) Plaintiff's microwave operated for three years past the warranty period without incident; (2) there has never been a determination, by either Samsung or the Consumer Products Safety Commission ("CPSC") that Plaintiff's model microwave is defective; (3) Plaintiff's failure to plead the date when the microwave was purchased precludes a determination of whether Samsung's recall of the RV installed microwaves fell within the warranty period for his microwave; and (4) even if Plaintiff could identify the purchase date, the documents attached to the Complaint contradict his claim because Plaintiff's microwave is not one of the models encompassed by the recall. (Def.'s Br. 6-7).

Under the Uniform Commercial Code § 2-313, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(1)(a).

Under the express terms of the Warranty, Plaintiff's claim of breach of the express warranty falls outside the applicable warranty period. It is undisputed that the one-year express warranty expired, at the very latest, on December 31, 2003, as Plaintiff alleges he received the microwave as a gift at the end of 2002 and alleges it malfunctioned in September 2006.

Although the court finds that Defendant's arguments as to Plaintiff's claim that "[t]he durational limitation of the warranty was satisfied by Samsung's determination that its membrane panels were defective" do not satisfy the requirements of Rule 12(b)(6), Plaintiff's claim fails nonetheless. Plaintiff does not elaborate beyond this single sentence in the Complaint or his brief. Plaintiff does not support this claim with any case law and the court need not credit such bald assertions or legal conclusions when deciding a motion to dismiss. Morse v. Lower Merion Sch. Dist. 132 F.3d 902, 906 (3d Cir. 1997).

Plaintiff's alternative argument that "the durational limitation is unreasonable, unconscionable and ineffective under 15 U.S.C. § 2308 and UCC §§ 2-316 and 2-719, because defendant knew the product was seriously defective and a fire hazard, and allowed the public to continue using it" also fails. Defendant argues that "nowhere in the Complaint is breach of implied warranty alleged, and Plaintiff should certainly not be permitted make [sic] this claim, for the very first time, in response to Samsung's Motion to Dismiss." (Def.'s Reply 2). Plaintiff's reference to 15 U.S.C. § 2308, however, which specifically deals with implied warranties, is sufficient to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), and Plaintiff's claim will be addressed.

Plaintiff relies, almost entirely, on Carlson v. General Motors Corp., 883 F.2d 287 (4th Cir. 1989) in support of his argument. However, Carlson is clearly distinguishable and is inapplicable to the facts of this case. In Carlson, 183 automobile buyers brought a class action against the seller for breach of implied warranty of merchantability based on their purchase of General Motors ("GM") products equipped with diesel engines. Plaintiffs alleged that the engines were inherently defective and subject to frequent breakdowns, necessitating expensive

repairs.  Plaintiffs claimed that GM's failure to correct these defects constituted a breach of the implied warranty of merchantability.  After the district court granted defendant's motion to dismiss the claims of most of the plaintiffs, an appeal was filed.  One of the issues that the Fourth Circuit Court of Appeals had to decide was "whether the district court erred by dismissing the separate claims of some plaintiffs that GM's durational limitations on any and all implied warranties of merchantability were 'unreasonable' and 'unconscionable.'"  Id. at 289.  These plaintiffs alleged that they had first encountered difficulties with their diesel cars after all express and implied warranties had expired and sought relief pursuant to 15 U.S.C. § 2308, which states in part:

> (b) Limitation on duration
>
> For purposes of this chapter . . . , implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.
>
> (c) Effectiveness of disclaimers, modifications, or limitations
>
> A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law.

15 U.S.C. § 2308.  The plaintiffs claimed that "the warranty limitations were unconscionable and of unreasonabl[y limited] duration because GM knew when it sold the cars that the diesel engines were defective . . . ."  883 F.2d at 290 (alteration in original).  They alleged that "GM knew of the inherent defects in its diesel engines-but failed to warn its customers of the consequential likelihood of 'catastrophic failures.'"  Id. at 294.  The court concluded, and Plaintiff relies on, the following:

8

Here, proof that GM knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged "durational limitations" on implied warranties constituted "overreaching," and that the disclaimers themselves were therefore "unconscionable." When a manufacturer is aware that its product is inherently defective, but the buyer has "no notice of [or] ability to detect" the problem, there is perforce a substantial disparity in the parties' relative bargaining power. *Martin, 767* F.2d at 302**. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies-including of course any warranty disclaimers-was neither "knowing" nor "voluntary," thereby rendering such limitations unconscionable and ineffective.** *Id.* at 301 **(citing** *Johnson v. Mobil Oil Corp.,* 415 F.Supp. 264, 269 (E.D.Mich.1976)**). Evidence of the "knowledge of [a] stronger party that the weaker party will be unable to receive substantial benefits from the contract"-or any related showing that "the transaction involved elements of deception"-should in most cases "contribute to a finding of unconscionability in the bargaining process."** Restatement (Second) of Contracts § 208 comment d (1981). ***See also*** **15 W. Jaeger,** *Williston on Contracts* **§ 1763A, at 224 (1972) (by definition, unconscionability includes "the procedural abuse of unfair surprise, usually manifested as a concealment of important facts"). That is in large measure what the plaintiffs here have claimed; and we therefore cannot say that their amended complaint failed to allege facts which, if proven to the court's satisfaction, could establish that, as a matter of law, GM's durational limitations on the operation of implied warranties were indeed unconscionable.**

**Id. at 296.**

Plaintiff argues that, "[j]ust like GM in <u>Carlson</u>, defendants here failed to disclose the inherent, material, latent defect in their product."  (Pl.'s Br. 12).  However, in <u>Carlson</u>, the court was dealing with a situation where it was alleged that GM knew of the defect when the cars were sold.  That is because unconscionability is measured <u>at the time the</u> <u>contract was formed</u>.  <u>See</u> **N.J.S.A. 12A:2-302; U.C.C. § 2-302 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable <u>at the time</u>**

9

**it was made** the court may refuse to enforce the contract . . . .") (emphasis added).

Here, there is no claim by Plaintiff that Samsung knew of any alleged defective part in the microwave that he received as a gift at the time it was sold.  In fact, the allegation is that Samsung was required to recall microwave ovens in the fall of 2003, well after the "end of 2002" date that Plaintiff alleges he received the microwave.  Thus, Plaintiff's claim that the durational limitation on the implied warranty is "unreasonable, unconscionable and ineffective" fails as a matter of law.  As Plaintiff's claims concerning both the express warranty and implied warranty fail to state a claim upon which relief can be granted, Count I will be dismissed.[1]

3.      **Count II- Consumer Fraud**

Plaintiff alleges that Defendant "engaged in deceptive or unconscionable practices by failing to disclose to all owners of the affected microwaves the fact that they contained defective membrane panels and were fire hazards, and by failing to pay for replacement."[2] (Compl. ¶ 30).  Plaintiff claims that he "was injured by such nondisclosure and nonreplacement."  (Id. at ¶ 31).

Under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 et seq., there are two categories of prohibited acts.  **Chattin v. Cape May Greene, Inc.**, 243 N.J. Super. 590, 598 (App. Div. 1990), aff'd, 124 N.J. 52 (1991).  The first category consists of

---

[1]Because the court will dismiss Count I on this ground, it is unnecessary to decide the issues of privity and whether Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 et seq.

[2]Although Plaintiff does not specify in the Complaint whether New York or New Jersey's consumer fraud statute applies, Plaintiff argues New Jersey law in his brief.

affirmative acts and the second consists of acts of omissions.  Id.  Consumer fraud

consisting of affirmative acts do not require a showing of intent, however, "an essential

element of a consumer fraud consisting of an act of omission is that a defendant's act be

'knowing.'" Id.

 The CFA states in part, "[a]ny person who suffers any ascertainable loss of moneys

or property, real or personal, as a result of the use or employment by another person of any

method, act, or practice declared unlawful under this act . . . may bring an action or assert

a counterclaim therefor in any court of competent jurisdiction."  N.J.S.A. 56:8-19.  "'To

state a claim under the CFA, a plaintiff must allege each of three elements (1) unlawful

conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a

causal relationship between the defendants' unlawful conduct and the plaintiff's

ascertainable loss.'" Carton v. Choice Point, 450 F. Supp. 2d 489, 498 (D.N.J. 2006)

(quoting N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div.

2003)).

 Defendant argues that Plaintiff's unlawful conduct claim is belied by the documents

attached to the Complaint which demonstrate that Samsung notified the public of all

microwave ovens which were the subject of the Recall.  Defendant contends that Plaintiff's

microwave was not subject to the Recall and that Plaintiff's conclusory allegation that the

RV Recall means that his microwave is defective should not be credited on this motion.

Additionally, Defendant argues that Plaintiff's unlawful conduct allegation is deficient

because Plaintiff failed to plead that Samsung's omissions occurred with knowledge or

intent.

Next, Defendant argues that even if Plaintiff could establish unlawful conduct by Samsung, his CFA claim should be dismissed because Plaintiff has not suffered an ascertainable loss.  Defendant relies exclusively on <u>Perkins v. DaimlerChrysler Corp.</u>, 383 N.J. Super. 99 (App. Div. 2006) in support of this argument.

In <u>Perkins</u>, plaintiff filed a class action complaint alleging, *inter alia*, that she was defrauded in violation of the CFA because defendant did not reveal that the vehicle she owned was manufactured with an exhaust manifold which was allegedly defective.  The court found that in the absence of any allegations that: (1) the deterioration or failure of the part represented a danger to others; (2) the part required repair or replacement; or (3) defendant contractually agreed to repair or replace the part beyond the requirements of the warranty, plaintiff could not have a viable CFA cause of action.  <u>Id.</u> at 112.  Additionally, the court held that "[a] defendant cannot be found to have violated the CFA when it provided a part-alleged to be substandard-that outperforms the warranty provided."  <u>Id.</u>  The court explained:

> As the Court said in *Thiedemann,* "[t]he defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate 'loss' that the CFA expressly requires for a private claim under the CFA, bringing with it the potential for treble damages, attorney's fees, and the court costs and fees." 183 *N.J.* at 251, 872 *A.*2d 783. **Similarly, a claim that a defect may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis for a claim under the CFA.**
>
> The logic of this holding is demonstrated by a consideration of what would have occurred if plaintiff had complained of the manifold exhaust prior to the expiration of the warranty period. In that case, should it have been determined that the manifold exhaust was defective and the warranty program required that it be replaced at defendant's sole cost and expense, and defendant

12

so complied, then plaintiff would have no viable cause of action because she would have incurred no ascertainable loss, as *Thiedemann* instructs. She also would have suffered no diminution in value because the manifold exhaust would have been replaced with a new part (perhaps, with its own new warranty), which not only would not decrease its value but, arguably, would increase the vehicle's value. Similarly, plaintiff may not maintain a CFA claim-and pursue treble damages, attorneys' fees and costs of suit-when the allegedly substandard part continues to perform beyond defendant's contractual obligation to repair or replace it. Otherwise, plaintiff's right to relief from the defendant would actually, and illogically, increase the longer the vehicle and its component parts perform.

In short, recognizing a viable CFA claim in the circumstances presented would essentially compel manufacturers and sellers to warrant their products and component parts beyond that to which the parties expressly agreed. Courts do not rewrite contracts into which parties have freely and voluntarily entered. *James v. Fed. Ins. Co.,* 5 *N.J.* 21, 24, 73 *A.*2d 720 (1950)**;** *Seaview Orthopaedics v. National Healthcare Resources, Inc.,* 366 *N.J.Super.* 501, 510, 841 *A.*2d 917 (App.Div.2004)**. To interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and scope of the warranty period. We decline to interpret the CFA to permit a claim which has that effect.**

<u>Id.</u> at 112-13.

Plaintiff argues that this case involves a danger to others and that "unlike <u>Perkins</u>, this is not a case where the manufacturer failed to disclose the abstract proposition that products may wear out after the warranty expires, but one where it concealed a known safety hazard that could have been corrected during the warranty period." (Pl.'s Br. 15).

Initially, it is important to note that Plaintiff's allegations under the CFA fall under the category of omissions. He alleges that Samsung failed to disclose that the alleged

affected microwaves contained a defective part and were fire hazards and that Samsung

failed to pay for a replacement.  As these allegations are omissions, as opposed to

affirmative acts, Plaintiff was required to allege that Samsung's acts were done knowingly.

Plaintiff has not.

    As to the elements of a cause of action under the CFA, even assuming, *arguendo*,

that Plaintiff has properly alleged that Defendant has engaged in some unlawful conduct,

Plaintiff has not alleged that he suffered an ascertainable loss.  In the Complaint, Plaintiff

alleges that he was injured by "nondisclosure and nonreplacement."  However, Plaintiff

does not allege that he suffered any quantifiable or measureable loss.  See Thiedemann v.

Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005) (noting that although the ascertainable

loss need not have been an out-of-pocket loss to plaintiff, it must be "quantifiable or

measurable").  Moreover, as the holding of Perkins demonstrates, because Plaintiff's

microwave continued to perform beyond the period in which Samsung was contractually

bound to repair or replace any defective part, Plaintiff cannot maintain a CFA claim.  To

recognize Plaintiff's claim would essentially extend the warranty period beyond that to

which the parties agreed.  Thus, Count II will be dismissed.

4.    Count III- Fraudulent Concealment

        In Count III, Plaintiff alleges that "Defendant engaged in fraudulent concealment

by failing to disclose to all owners of the affected microwaves the fact that they contained

defective membrane panels and were fire hazards."  (Compl. ¶ 33).  Plaintiff alleges that he

"was injured by such nondisclosure."  (Id. at ¶ 34).

        "'To establish a claim for common-law fraud, plaintiff must demonstrate that: (1)

14

defendant made a material misrepresentation or omission of fact; (2) knowing the misrepresentation to be false or the omission to be material, and intending the other party to rely on it; and (3) the other party did in fact rely on the misrepresentation or omission *to its detriment*.'" <u>Carton</u>, 450 F. Supp. 2d at 500 (quoting <u>Zorba Contractors, Inc. v. Hous. Auth., City of Newark</u>, 362 N.J. Super. 124, 139 (App. Div. 2003)).

Defendant argues that the claim fails because the Complaint does not allege that Plaintiff relied to his detriment on any misrepresentation or omission by Samsung. Defendant also contends that although Plaintiff alleges he was injured, he does not set forth any quantifiable damages. Finally, Defendant argues that Plaintiff has failed to comply with Rule 9(b), which requires that claims for fraud be plead with particularity.

Plaintiff argues that "if Samsung had informed him within the warranty period that his oven was a fire hazard, he would have done what he ultimately did when he learned of the problem - demanded that it be fixed." (Pl.'s Br. 17). Further, Plaintiff contends that a federal complaint is not required to state a dollar amount and that Rule 9(b) is adequately complied with by alleging that the ovens installed in RVs were recalled and that the non-RV ovens had the same defect as those that were recalled. (<u>Id.</u> at 17-18).

In the Complaint, there is no allegation that: (1) Defendant knowingly made a material omission; (2) Defendant intended Plaintiff to rely on this omission; or (3) Plaintiff relied on this omission to his detriment. Therefore Count III fails to state a claim upon which relief can be granted is will be dismissed.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to dismiss will be granted. The

court will enter an order implementing this opinion.




/s/ Dickinson R. Debevoise_____
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**




Dated:                    March 2, 2007